1

2

3  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
4  100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
5  Telephone: (612) 339-6900
Facsimile: (612) 339-0981
6  E-mail: rapeterson@locklaw.com
         rkshelquist@locklaw.com
7
Attorneys for Plaintiff
8
[Additional Counsel on Signature Page]
9

10              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
11                  WESTERN DIVISION

12  GEORGEANNE HALL individually        )  Case No. 2:19-cv-01423
13  and on behalf of a class of similarly  )
   situated individuals,                )  CLASS ACTION
14                                       )
                                        )
15              PLAINTIFF,               )  **CLASS ACTION COMPLAINT**
16                                       )
   v.                                    )  **JURY TRIAL DEMANDED**
17                                       )
                                        )
18  HILL'S PET NUTRITION, INC., and     )
   HILL'S PET NUTRITION SALES,          )
19  INC.,                                )
                                        )
20                                       )
                                        )
21              **DEFENDANTS**.          )
22  ─────────────────────────────

23

24

25

26

27

28

# CLASS ACTION COMPLAINT

1.     Plaintiff Georgeanne Hall ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendants Hill's Pet Nutrition, Inc., and Hill's Pet Nutrition Sales, Inc., (together, "Hill's" or "Defendants"), for their negligent, reckless, and/or intentional practice of misrepresenting, failing to test for, and failing to fully disclose the presence of toxic levels of Vitamin D in their Contaminated Dog Foods (defined below) and for selling Contaminated Dog Foods that are adulterated and do not conform to the labels, packaging, advertising, and statements throughout the United States.  Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (defined below), including: (i) requiring full disclosure of all such substances and ingredients in Defendants' marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for such substances; (iii) prohibiting the sale of any adulterated dog food in the future (iv) requiring Defendants to offer Plaintiff and the proposed class $500 vouchers for each can of Contaminated Food as they have offered veterinarians and (iv) restoring monies to the members of the proposed Class.  Plaintiff alleges the following based upon personal knowledge as well as investigation by their counsel and discovery and as to all other matters, upon information and belief.

I.    **THE ADULTERATED CONTAMINATED DOG FOODS WERE IMPROPERLY SOLD AND MISLEADINGLY MARKETED TO CONSUMERS**

2.    Defendants manufacture, market, advertise, label, distribute, and sell pet food under the brand names Hill's Prescription Diet ("Prescription Diet") and Hill's Science Diet ("Science Diet") dog foods (collectively "Contaminated Dog Foods") throughout the United States, including in this District.  Hill's describes each brand as follows:

(a)    "Prescription Diet® brand pet foods are formulated to address specific medical conditions that can develop in pets. Prescription Diet foods are available through your pet's veterinarian, or through authorized online retailers. If you have a pet with a medical condition, please speak to your veterinarian to see if a Prescription Diet pet food is right for your dog or cat. Prescription Diet is clinical nutrition to improve quality of life™."

(b)    "Science Diet® brand pet foods are formulated to meet the needs of healthy pets during various life stages. Science Diet healthy pet food offers clinically proven benefits that promote vitality and well-being at any age or lifestyle with a full range of precisely balanced products. Science Diet has 100% of what pets need, 0% of what they don't. Science Diet has the finest natural ingredients your pet will love and no artificial colors, flavors or preservatives to help ensure that your pet lives a happy, healthy life."

3.     Defendants have created a niche in the pet food market by marketing foods they claim will "help enrich and lengthen the special relationships between people and their pets."     Defendants' website states, "Guided by science, we formulate our food with precise balance so your pet gets all the nutrients they need — and none they don't."

4.     The Science Diet foods are allegedly manufactured using "INGREDIENTS CHOSEN FOR TASTE & QUALITY."  Each can of Science Diet is described as "Premium Dog Food."

5.     With respect the Prescription Diet foods, Hill's promises, "[O]nly the best ingredients from the most trusted sources are the foundation for all Prescription Diet® foods. We also conduct 5 million quality and safety checks per year at the facility as well as voluntary third-party inspections nearly every month to ensure that we are maintaining the highest standards."  Each can of Prescription Diet promises "clinical nutrition."

6.     Defendants' website makes the following representations and promises:



TRUST THE HILL'S STANDARD

A proven commitment to quality and safety.

CLASS ACTION COMPLAINT

## Every transformation starts with science

Whether it's conducting industry-leading research, analyzing nutrient levels in each of our products or selecting optimal ingredients for your pet's health, Hill's is driven by science for results you can see — in every little transformation.

7.    Defendants make numerous other representations and promises about the Contaminated Dog Foods' nutrition as well as their supply chain and quality control measures, including but not limited to the following:

(a)    "Our quality and safety standards are so rigorous, they're modeled after human food manufacturers — so your pet gets a food made with their best interest in mind."

(b)    "With 220+ veterinarians, PhD nutritionists and food scientists, we develop breakthrough innovations for your pet's health."

(c)    "We only accept ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's."

(d)    "Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need."

(e)    "We conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves."

(f)    "We demand compliance with current Good Manufacturing Practices (cGMP) and Hill's high quality standards, so your pet's food is produced under clean and sanitary conditions."

(g)    "We conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food."

(h)    "Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag."

8.    These foods are allegedly formulated for the specific health needs of dogs and are sold for a premium price because of these claims.    However, Defendants announced a recall on January 31, 2019, which it expanded on February 8, 2019, of certain Contaminated Dog Foods "due to elevated levels of Vitamin D." The full list of Contaminated Dog Foods that were recalled include:[1]

---

[1] *Voluntary Product Recall Frequently Asked Questions*, https://www.hillspet.com/productlist/faq#vitamin-d-symptoms (last visited Feb. 15, 2019).

a) Hill's® Prescription Diet® c/d Multicare Canine Chicken & Vegetable Stew, 12.5 ounces

 

b) Hill's® Prescription Diet® i/d Canine Chicken & Vegetable Stew, 12.5 ounces

 

CLASS ACTION COMPLAINT

c) Hill's® Prescription Diet® i/d Canine Chicken & Vegetable Stew, 5.5 ounces



d) Hill's® Prescription Diet® z/d Canine, 5.5 ounces

 

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

e)  Hill's® Prescription Diet® g/d Canine, 13 ounces

 

f)  Hill's® Prescription Diet® i/d Canine, 13 ounces

 

CLASS ACTION COMPLAINT

g)  Hill's® Prescription Diet® j/d Canine, 13 ounces

 

h)  Hill's® Prescription Diet® k/d Canine, 13 ounces

 

CLASS ACTION COMPLAINT

1

i)   Hill's® Prescription Diet® w/d Canine, 13 ounces

2

3

4

5

6

7

8

9

10

 

11

12

j)   Hill's® Prescription Diet® z/d Canine, 13 ounces

13

14

15

16

17

18

19

20

21



22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

k)   Hill's® Prescription Diet® Metabolic + Mobility Canine Vegetable & Tuna Stew, 12.5 ounces

 

l)   Hill's® Prescription Diet® w/d Canine Vegetable & Chicken Stew, 12.5 ounces

 

CLASS ACTION COMPLAINT

m) Hill's® Prescription Diet® i/d Low Fat Canine Rice, Vegetable & Chicken Stew, 12.5 ounces



n) Hill's® Prescription Diet® Derm Defense® Canine Chicken & Vegetable Stew, 12.5 ounces

- 12 -

o) Hill's® Science Diet® Adult 7+ Small & Toy Breed Chicken & Barley Entrée, 5.8 ounces

 

p) Hill's® Science Diet® Puppy Chicken & Barley Entrée, 13 ounces

 

1    q)  Hill's® Science Diet® Adult Chicken & Barley Entrée, 13 ounces

   

12   r)  Hill's® Science Diet® Adult Turkey & Barley Entrée, 13 ounces

   

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

s)   Hill's® Science Diet® Adult Chicken & Beef Entrée, 13 ounces

 

t)   Hill's® Science Diet® Adult Light with Liver, 13 ounces

 

CLASS ACTION COMPLAINT

u) Hill's® Science Diet® Adult 7+ Chicken & Barley Entrée, 13 ounces

 

v) Hill's® Science Diet® Adult 7+ Beef & Barley Entrée, 13 ounces

 

CLASS ACTION COMPLAINT

1

w) Hill's® Science Diet® Adult 7+ Turkey & Barley Entrée, 13 ounces

2

3

4

5

 

6

7

8

9

10

11

12

x) Hill's® Science Diet® Adult 7+ Healthy Cuisine Braised Beef, Carrots & Peas Stew, 12.5 ounces

13

14

15

16

 

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

y) Hill's® Science Diet® Adult 7+ Youthful Vitality Chicken & Vegetable Stew, 12.5 ounces

 

9. The recall involves an estimated 675,000 cases of canned food.

10. According to Defendants, "[they] learned of the potential for elevated Vitamin D levels in select canned dog foods after receiving a complaint about a dog exhibiting signs of elevated Vitamin D levels. Our investigation confirmed that a product contained elevated levels of Vitamin D due to a supplier error."[2]

11. Defendants explain the dangers of excessive Vitamin D on their website:[3]

12. The FDA repeated these warnings when it announced the recall: "While Vitamin D is an essential nutrient for dogs, ingestion of elevated levels can lead to

[2] *Id.*

[3] *Id.*

CLASS ACTION COMPLAINT

potential health issues depending on the level of Vitamin D and the length of exposure, and dogs may exhibit symptoms such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss. Vitamin D, when consumed at very high levels, can lead to serious health issues in dogs including renal dysfunction."[4]

13.    The inclusion of excessive Vitamin D at injurious levels renders the Contaminated Dog Foods as adulterated under relevant federal and state law

## II.    DEFENDANTS KNOWINGLY AND/OR RECKLESSLY DELAYED THE RECALL OF THE CONTAMINATED DOG FOODS DESPITE ASSURANCES OF SUPERIOR QUALITY AND SAFETY CONTROLS

14.    Defendants' recall came over two months after pet food manufacturers Sunshine Mills, Inc.; Ahold Delhaize; Kroger; King Soopers; ELM Pet Foods, Inc.; ANF, Inc.; Lidl; Natural Life Products; and Nutrisca "found that samples of the dog food contained excessive, potentially toxic amounts of Vitamin D" and announced recalls in November and December 2018.[5] "FDA scientists [] evaluated samples of these products, and State and private lab test results indicate[d] that the food contained as much as approximately 70 times the intended amount of Vitamin D."[6]

---

[4] *Hill's Pet Nutrition Voluntarily Recalls Select Canned Dog Food for Excessive Vitamin D*, https://www.fda.gov/Safety/Recalls/ucm630232.htm (last visited Feb. 15, 2019).

[5] *FDA Alerts Pet Owners About Potentially Toxic Levels of Vitamin D in Several Dry Pet Foods*, https://www.fda.gov/animalveterinary/newsevents/ucm627485.htm (last visited Feb. 15, 2019).

[6] *Id.*

15.    Defendants failed to act in a timely manner when it learned of the broad scope of the initial Vitamin D recall in November 2018.  They mislead consumers by claiming:

(a)    "Our quality and safety standards are so rigorous, they're modeled after human food manufacturers — so your pet gets a food made with their best interest in mind."

(b)    "We only accept ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's."

(c)    "Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need."

(d)    "We conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves."

(e)    "We demand compliance with current Good Manufacturing Practices (cGMP) and Hill's high quality standards, so your pet's food is produced under clean and sanitary conditions."

(f)    "We conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food."

(g)    "Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag."

- 20 -

16.    Defendants further mislead consumers by promising their "Premium Dog Food" and "Clinical Nutrition."

17.    Plaintiff brings this action individually and on behalf of all other similarly situated consumers within California who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence and/or risk of inclusion of elevated levels of Vitamin D or other ingredients in the Contaminated Dog Foods that do not conform to the labels, packaging, advertising, and statements; to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog  Foods are suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated; and to obtain redress for those who have purchased the Contaminated Dog Foods.

## III.    JURISDICTION AND VENUE

18.    This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

19.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff resides and suffered injury as a result of Defendants' acts in this District,

many of the acts and transactions giving rise to this action occurred in this District, Defendants' principal place of business and headquarters are in this District; Defendants conduct substantial business in this District, Defendants have intentionally availed themselves of the laws and markets of this District, and Defendants are subject to personal jurisdiction in this District.

## IV.    PARTIES

20.    Plaintiff Georgeanne Hall, and at all times relevant hereto has been, a resident of the state of California.  Plaintiff purchased the following Contaminated Dog Foods for her dog, Taki, a chihuahua mix who passed away in February 2019 from renal failure. Taki was his mom's travel companion and is greatly missed. Plaintiff Hall purchased the Hill's® Prescription Diet® i/d® Canine Vegetable & Chicken Stew and Hill's® Prescription Diet® i/d® Low Fat Canine Rice, Vegetable & Chicken Stew starting in late November 2018 through January 2019 from Allen Animal Hospital, Shop City VCA Animal Hospital, California Veterinary Specialists and VCA Animal Hospital in Hesperia, California. Prior to purchasing the Contaminated Dog Foods, Plaintiff saw the nutritional and quality control claims on the packaging and heard the representations from the veterinarian, which she relied on when deciding to purchase the Contaminated Dog Foods.  During that time, based on the false and misleading claims, representations, advertisements, and other marketing by Defendants, Plaintiff was unaware that the Contaminated Dog Foods contained and/or had a risk of containing elevated levels of Vitamin D that do not

conform to the labels, packaging, advertising, and statements and would not have purchased the food if that was fully disclosed. Plaintiff Hall injured by paying a premium for the Contaminated Dog Foods that have no or *de minimis* value based on the elevated levels of Vitamin D that do not conform to the labels, packaging, advertising, and statements.

21.    As the result of Defendants' negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the Contaminated Dog Foods that did not deliver what was promised. Plaintiff Hall paid the premium price on the assumption that the labeling of the Contaminated Dog Foods was accurate and that it was suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated. Plaintiff would not have paid this money had she known that the Contaminated Dog Foods contained and/or had risk of containing elevated levels of Vitamin D or other ingredients that do not conform to the labels, packaging, advertising, and statements. Plaintiff was further injured because the Contaminated Dog Foods have no or *de minimis* value based on the elevated levels of Vitamin D or other ingredients that do not conform to the labels, packaging, advertising, and statements. Damages can be calculated through expert testimony at trial. Further, should Plaintiff encounter the Contaminated Dog Foods in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog Foods.

22.     Defendant Hill's Pet Nutrition, Inc. is a Delaware corporation, with its principal place of business in Kansas. Hill's is located at 400 SW 8th Avenue, Topeka, Kansas 66603.

23.     Defendant Hill's Pet Nutrition Sales, Inc. is a Delaware corporation, with its principal place of business in Kansas. Defendant Hill's Pet Nutrition Sales, Inc. is authorized by the California  Secretary of State to do business within the State of California.

## V.    COMMON FACTUAL ALLEGATIONS

### A.    Defendants Marketed the Contaminated Dog Foods to Consumers with Specific Promises of Providing Medical and/or Health Solutions to Pets Yet Failed to Disclose the Foods were Adulterated

24.     Defendants formulate, develop, manufacture, label, package, distribute, market, advertise, and sell their Contaminated Dog Foods across the United States, including at veterinary clinics and pet retailers, as well as through online retailers like Amazon and Chewy.  No matter where consumers purchase the Contaminated Dog Foods, they are packaged in sealed containers with the same labeling and packaging that is displayed on the Defendants' website.[7]

25.     The adulterated Contaminated Dog Foods are sold either only with prescription from a veterinarian or with the promotion of "veterinarian recommended." Moreover, these foods contain marketing representations that each

---

[7] *See, e.g.,* https://www.hillspet.com/dog-food (last visited February 11, 2019)

- 24 -

is formulated for specific issues or breeds, including weight management and digestive or kidney issues. Defendants also make a number of representations about the superiority of their quality control and manufacturing processes.

26.     Defendants' website touts the Contaminated Dog Foods' nutritional qualities, claiming that the products "[s]upport[ ] a healthy immune system,"[8] "improve and lengthen quality of life,"[9] "can be used long-term,"[10] "[p]rotect[ ] vital kidney & heart function,"[11] "[s]upport your dog's natural ability to build lean muscle daily,"[12] and "meet[ ] the special nutritional needs of puppies and adult dogs."9[13]

27.     Defendants also issue a "100% Satisfaction" money-back guarantee with every Contaminated Dog Food purchase. Yet, Defendants negligently, recklessly, and/or knowingly omitted that the Contaminated Dog Foods were adulterated based on the excessive levels of Vitamin D and should not be sold for consumption by pets.

---

[8] *See, e.g.,* https://www.hillspet.com/dog-food/pd-id-canine-canned# (last visited February 11, 2019).

[9] *See, e.g.,* https://www.hillspet.com/dog-food/pd-kd-canine-canned (last visited February 11, 2019).

[10] *See, e.g.,* https://www.hillspet.com/dog-food/pd-id-sensitive-canine-dry# (last visited February 11, 2019).

[11] *See, e.g.,* https://www.hillspet.com/dog-food/pd-kd-canine-canned# (last visited February 11, 2019).

[12] *Id.*

[13] *See, e.g.,* https://www.hillspet.com/dog-food/pd-id-canine-chicken-and-vegetable-stew-canned (last visited February 11, 2019).

28.    Based on Defendants' representations, warranties, labels, various affirmations of fact about the quality of their manufacturing processes and their Science and Prescription Diets, consumers across the country paid a premium for the Contaminated Dog Foods.

29.    The Contaminated Dog Foods that consumers across the country have fed to their pets have proven to be toxic, causing symptoms of renal failures such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, vomiting, and often death.[10]

30.    In the end, Defendants chose to advertise, label, and market its products, including the Contaminated Dog Foods, as pure, high quality, healthy and safe for dogs to ingest without disclosing that the Contaminated Dog Foods were adulterated and also delayed a recall that was required to ensure the safety of pets.

**B.    Vitamin D Toxicity**

31.    Vitamin D is an essential nutrient for dogs.  It is added to pet foods during the manufacturing process using a supplement.  This is usually purchased by pet food manufacturers from suppliers as part of a "pre-mix" of vitamins and minerals and then added to the pet food "mixer."

32.    Defendants' website explains, "Unlike people (who can synthesize Vitamin D), dogs rely solely on dietary sources for Vitamin D. Therefore, pet food

is often enriched with Vitamin D[14]."  However, Vitamin D can cause mild to serious health problems, including renal failure, when it exceeds certain levels.  Symptoms of excessive Vitamin D consumption include vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss.  Pet food containing excessive levels of Vitamin D that is injurious (such as here) is adulterated food under various relevant state and federal regulations.

33.  Specifically, under the FDCA, a food is adulterated if it "bears or contains any poisonous or deleterious substance which may render it injurious to health." 21 U.S.C. § 342.  Under California law, pet food is considered adulterated if "it bears or contains any poisonous or deleterious substance that may render it injurious to health," "If it contains a pet food ingredient for which a standard of identity has been established and the pet food ingredient fails to meet that standard" or "if damage or inferiority has been concealed in any manner."  Cal. Health & Safety Code § 113090(a),(c), (h).  California's statute also provides that pet food ingredients "of animal or poultry origin shall be only from animals or poultry slaughtered or processed in an approved or licensed establishment….  Animal or poultry classified as 'deads' are prohibited."  Cal. Health & Safety Code § 113035. Other relevant states likewise prohibit the sale of adulterated pet food.  Ohio Rev. Code Ann. § 923.41, *et seq*.; Ala. Code § 2-21-23; Fla. Stat. § 500.10; Ga. Code

---

[14] *Voluntary Product Recall Frequently Asked Questions*, https://www.hillspet.com/productlist/faq#vitamin-d-symptoms (last visited Feb. 15, 2019).

Ann. § 2-13-11; 505 Ill. Comp. Stat. Ann. 30/11.1; N.Y. Agric. & Mkts. Law § 199-A; Tex. Agric. Code Ann. § 141.002, *et seq*.

34.    Pet food recalls due to excessive Vitamin D began on November 2, 2018 with a recall from Natural Life Pet Products and Nutrisca dry dog foods. Recalls by several other manufacturers followed, culminating with Defendants' recalls on January 31, 2019 and February 8, 2019.

35.    Natural Life Pet Products, the first manufacturer to initiate a recall, identified a "formulation error" as the root of the problem. Defendants have only stated, "Our investigation confirmed elevated levels of Vitamin D due to a supplier error." Neither the manufacturers nor the FDA have disclosed where in the manufacturing process these errors occurred.

C.    **The Pet Food Industry, Including Defendants, Knows that the Average Consumer Cares and Considers What They Are Feeding Their Pet**

36.    Consumers are becoming increasingly concerned with what they feed their pets. In addition, Defendants have chosen to market specifically to consumers that are trying to address medical and/or health issues with their pets.

37.    The pet food industry has been reporting on the humanization of both pets and pet food for years.

38.     A recent survey done by a pet food giant showed that "95 percent [of pet owners] agreed they saw their canine as part of the family." And 73 percent of them responded they would make sure their "pet gets food before they do."[15]

39.     This is nothing new; a 2017 survey reported the same results: "In the US, 95% of pet owners consider their pets to be part of the family—up 7 points from 2007, according to a survey by Harris Poll."[16]

40.     Indeed, based on this, it was reported that "there isn't much people won't do for their pets, and this sentiment has only strengthened over the past few years, especially for pet food. Pet food accounts for 76% of the pet care category, representing a significant opportunity for pet companies."[17]

41.     And, pet owners want "pet food options that address the same health concerns currently influencing human food production, such as unnatural preservatives and genetically modified ingredients—and they're serious about these preferences."[18]

> Treating pets like one of the family continues to be a popular trend among pet owners; however, today, their purchases are more and more functionally driven as health becomes a top priority.

42.     Defendants' marketing uses this shift in paradigm of pet owners of humanization of pet food and viewing pets as family, stating "We believe daily

---

[15] https://people.com/pets/study-women-prefer-dogs-to-partner/

[16] https://www.petfoodindustry.com/articles/5695-report---say-pets-are-part-of-the family

[17] *Id.*

[18] http://www.nielsen.com/us/en/insights/reports/2016/the-humanization-of-petfood.html

nutrition is the single most important thing you can do to enrich and lengthen the special relationship you have with your pet."[19]

43.     Thus, consumers are willing to pay a premium for their pet food if their pet food is of superior quality, as Defendants advertised. This is especially true of consumers who are purchasing prescription foods for their pets.

**D.     Plaintiff's Reliance was Reasonable and Foreseen by Defendants**

44.     Plaintiff reasonably relied on Defendants' own claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Dog Foods.

45.     Plaintiff also relied upon Defendants' false and/or misleading representations alleged herein, including the websites and/or the Contaminated Dog Foods' labels and packaging in making their purchasing decisions.

46.     Any reasonable consumer would consider the labeling of a product (as well as the other false and/or misleading representations alleged herein) when deciding whether to purchase.  Here, Plaintiff relied on the certainty of the various specific statements and misrepresentations by Defendants that the Contaminated Dog Foods were suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated

---

[19] https://www.hillspet.com/

CLASS ACTION COMPLAINT

with no disclosure of the inclusion of excess Vitamin D or other ingredients that do not conform to the labels, packaging, advertising, and statements.

### E.    Defendants' Knowledge of the Vitamin D Contamination

47.    Defendants' recall of the Contaminated Dog Foods was not an isolated incident. It came approximately three months after a widespread recall of other pet foods containing excess Vitamin D.

48.    When the first Vitamin D recall occurred on November 3, 2018, he FDA began to test products and concluded that a wide swath of dog foods sold in the United States contained potentially lethal doses of Vitamin D sometimes as much as 70 times more than the recommended dosage.

49.    On December 3, 2018, the FDA issued a press release warning pet owners about potentially toxic levels of Vitamin D in several brands of pet food, and noting that it was working with a common contract manufacturer of pet food to provide a comprehensive list of affected brands.

50.    Despite the FDA's public warnings, Defendants continued to manufacture, sell and warrant its Contaminated Dog Foods, to the detriment of consumers and their pets alike instead of properly investigating and testing the Contaminated Dog Foods.

51.    On January 31, 2019, Hill's announced an initial recall of canned Prescription Diet and Science Diet products. Hill's issued a press release detailing the risk of excessive Vitamin D consumption and identifying affected products.[14]

52.     Even though a video message included with the January 31, 2019 recall represented that the SKU and lot numbers identified in the January 31, 2019 recall were "confirmed to be the only affected products in this voluntary canned dog food recall[]", on February 8, 2019, Hill's announced an expansion of the recall to include additional SKU and lot numbers of canned Prescription Diet and Science diet products.[15]

53.     At the same time, Defendants have, and had, exclusive knowledge of the physical and chemical makeup of the Contaminated Dog Foods.  Defendants also had exclusive knowledge of their suppliers, including where the ingredients are sourced, how the ingredients arrive at their manufacturing facilities, and the quality and content of the received ingredients.  Defendants have publicly described their quality control procedure as follows:

(a)     "We only accept ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's."

(b)     "Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need."

(c)     "We conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves."

(d)    "We demand compliance with current Good Manufacturing Practices (cGMP) and Hill's high quality standards, so your pet's food is produced under clean and sanitary conditions."

(e)    "We conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food."

(f)    "Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag."

54.    Defendants therefore had knowledge of the potential risk and inclusion of excessive Vitamin D in their Contaminated Dog Foods.  Defendants received notice of potential Vitamin D contamination through consumer complaints.  It also knew or should have known about the recall announcements by the FDA and other pet food manufacturers.

55.    Defendants also admit that the damages arising from the sale of the Contaminated Dog Foods far exceed the cost of purchasing the same.  They have offered veterinary clinics $500 vouchers for each can of Contaminated Food purchased to compensate them for the damages caused by the recall.

**F.    PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS**

56.    Defendants knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Contaminated Dog Foods and the target of their advertising and statements.

57.    Defendants intended that the advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiff and the proposed Class.

58.    Defendants directly marketed to Plaintiff and the proposed Class through statements on their website, labeling, advertising, and packaging.

59.    Plaintiffs are the intended third-party beneficiaries of the contracts between Defendants and veterinarians and/or other third-parties.

## VI.    CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who reside in the State of California who, from California, to the present, purchased the Contaminated Dog Foods in the State of California for household or business use, and not for resale (the "Class");

61.    Excluded from the Class are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

62.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

- 34 -

63.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

64.    Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

(a)    whether Defendants owed a duty of care to Plaintiff and the Class;

(b)    whether the Contaminated Dog Foods that contained harmful and  excess levels of Vitamin D are adulterated;

(c)    whether Defendants knew or should have known that the Contaminated Dog Foods contained excess levels of Vitamin D or other ingredients that do not conform to the labels, packaging, advertising and statements;

(d)    whether Defendants failed to test for the presence of excess Vitamin D or other ingredients that do not conform to the labels, packaging, advertising, and statements;

(e)    whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated;

(f)    whether Defendants wrongfully represented and continue to represent that the manufacturing of the Contaminated Dog Foods is subjected to rigorous standards, including temperature;

(g)    whether Defendants wrongfully failed to state that the Contaminated Dog Foods contained (or had a risk or probability of containing) excess levels of Vitamin D and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements;

(h)    whether Defendants' representations in advertising, statements packaging, and/or labeling are false, deceptive, and misleading;

- 35 -

(i)    whether those representations are likely to deceive a reasonable consumer;

(j)    whether a reasonable consumer would consider the excessive Vitamin D or other ingredients that do not conform to the labels, packaging, advertising, and statements as a material fact in purchasing pet food;

(k)    whether Defendants had knowledge that their representations were false, deceptive, and misleading;

(l)    whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(m)    whether a representation that a product is suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated is material to a reasonable consumer;

(n)    whether Defendants' representations and descriptions on the labeling of the Contaminated Dog Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(o)    whether Defendants violated California state laws;

(p)    whether Defendants engaged in unfair trade practices;

(q)    whether Defendants' conduct was negligent;

(r)    whether Defendants' conduct was fraudulent;

(s)    whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

(t)    whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

(u)    whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

65.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other

- 36 -

members of the Class.  Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

66.    Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

67.    Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

68.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

69.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

70.    As a result of the foregoing, class treatment is appropriate.

# CAUSES OF ACTION

## COUNT I

## Breach of Express Warranty

71.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.    Defendants marketed and sold their Contaminated Dog Foods into the stream of commerce with the intent that the Contaminated Dog Foods would be purchased by Plaintiff and the Class.

73.    Defendants expressly warranted, advertised, and represented to Plaintiff and the Class that their Contaminated Dog Foods are:

(a)    Are "Premium Dog Food" that is suitable for consumption by dogs;

(b)    Provide "Clinical Nutrition";

(c)    Are Manufactured using "rigorous" quality and safety standards;

(d)    Are routinely subjected to numerous quality and safety checks, inspections, and audits throughout the manufacturing process;

(e)    Contain "only the best ingredients from the most trusted sources";

(f)    Will "help enrich and lengthen the special relationships between people and their pets;" and

(g)     Are unadulterated as they are available to purchase for the consumption of pets.

74.     Defendants made these express warranties regarding the Contaminated Dog Foods' quality, ingredients, and fitness for consumption in writing through their websites, advertisements, and marketing materials and on the Contaminated Dog Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Contaminated Dog Foods.

75.     Defendants' advertisements, warranties, and representations were made in connection with the sale of the Contaminated Dog Foods to Plaintiff and the Class. Plaintiff and the Class relied on Defendants' advertisements, warranties, and representations regarding the Contaminated Dog Foods in deciding whether to purchase Defendants' products.

76.     Defendants' Contaminated Dog Foods do not conform to Defendants' advertisements, warranties and representations in that they:

(a)     Were adulterated and not sold as such;

(b)     Are neither premium nor suitable for consumption by dogs;

(c)     Do not provide "Clinical Nutrition";

(d)     Were not Manufactured using "rigorous" quality and safety standards;

- 39 -

CLASS ACTION COMPLAINT

(e)    Were not subjected to adequate quality and safety checks, inspections, and audits throughout the manufacturing process;

(f)    Contained ingredients, including supplements, procured from suppliers known to sell adulterated ingredients; and

(g)    Harmed and shortened rather than "enrich[ed] and lengthen[ed] the special relationships between people and their pets."

77.    Defendants were on notice of this breach as they were aware of the excessive Vitamin D levels that rendered their Contaminated Dog Foods unhealthy.

78.    Privity exists because Defendants expressly warranted to Plaintiff and the Class that the Contaminated Dog Foods were suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated.

79.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Contaminated Dog Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements .

80.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder

for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II

### Breach of Implied Warranty of Merchantability

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     Defendants are merchants engaging in the sale of goods to Plaintiff and the Class.

83.     There was a sale of goods from Defendants to Plaintiff and the members of the Class.

84.     At all times mentioned herein, Defendants manufactured or supplied the Contaminated Dog Foods, and prior to the time the Contaminated Dog Foods were purchased by Plaintiff and the Class, Defendants impliedly warranted to them that the Contaminated Dog Foods were of merchantable quality, fit for their ordinary use (consumption by dogs), and conformed to the promises and affirmations of fact made on the Contaminated Dog Foods' containers and labels, including that the Contaminated Dog Foods:

(a)     Are "Premium Dog Food" that is suitable for consumption by dogs;

(b)     Provide "Clinical Nutrition";

(c)     Are Manufactured using "rigorous" quality and safety standards;

- 41 -

(d)    Are routinely subjected to numerous quality and safety checks, inspections, and audits throughout the manufacturing process;

(e)    Contain "only the best ingredients from the most trusted sources"; and

(f)    Will "help enrich and lengthen the special relationships between people and their pets;" and

(g)    Are unadulterated as they are available to purchase for the consumption of pets.

85.    Plaintiff and the Class relied on Defendants' promises and affirmations of fact when they purchased the Contaminated Dog Foods.

86.    The Contaminated Dog Foods were not fit for their ordinary use, consumption by dogs, and did not conform to Defendants' affirmations of fact and promises as they contained excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements at levels material to a reasonable consumer.

87.    Defendants breached the implied warranties by selling the Contaminated Dog Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

88.    Defendants were on notice of this breach as they were aware of the excessive Vitamin D levels included in the Contaminated Dog Foods and/or the risk of excessive Vitamin D levels, based on the recalls of other pet foods.

89.    Privity exists because Defendants impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Dog Foods were suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated and by failing to make any mention of excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

90.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Contaminated Dog Foods that were worth less than the price they paid and that they would have not have purchased at all had they known of the risk and/or presence of excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

91.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

CLASS ACTION COMPLAINT

## COUNT III

### Fraudulent Misrepresentation Against Defendants on Behalf of the Class

92.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

93.    Defendants falsely represented to Plaintiff and the Class that their Contaminated Dog Foods:

(a)    Are "Premium Dog Food" that is suitable for consumption by dogs;

(b)    Provide "Clinical Nutrition";

(c)    Are Manufactured using "rigorous" quality and safety standards;

(d)    Are routinely subjected to numerous quality and safety checks, inspections, and audits throughout the manufacturing process;

(e)    Contain "only the best ingredients from the most trusted sources";

(f)    Will "help enrich and lengthen the special relationships between people and their pets;"

(g)    Are unadulterated as they are available to purchase for the consumption of pets.

94.    Defendants intentionally and knowingly made these misrepresentations to induce Plaintiff and the Class to purchase their Contaminated Dog Foods.

- 44 -

95.    Defendants knew that their representations about the Contaminated Dog Foods were false in that the Contaminated Dog Foods contain excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendants allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

96.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Contaminated Dog Foods to their detriment. Given the deceptive manner in which Defendants advertised, represented, and otherwise promoted the Contaminated Dog Foods, Plaintiff and the Class's reliance on Defendants' misrepresentations was justifiable.

97.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Contaminated Dog Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

98.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

CLASS ACTION COMPLAINT

## COUNT IV

## Fraud by Omission Against Defendants on Behalf of the Class

99.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.    Defendants concealed from and failed to disclose to Plaintiff and the Class that their Contaminated Dog Foods contained excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

101.    Defendants were under a duty to disclose to Plaintiff and members of the Class the true quality, characteristics, ingredients and suitability of the Contaminated Dog Foods because: (1) Defendants were in a superior position to know the true state of facts about their products; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Contaminated Dog Foods; and (3) Defendants knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Contaminated Dog Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Contaminated Dog Foods.

102.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Contaminated Dog Foods.

103.   Plaintiff and the Class justifiably relied on the Defendants' omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Contaminated Dog Foods, which is inferior when compared to how the Contaminated Dog Foods are advertised and represented by Defendants.

104.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Contaminated Dog Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

105.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT V**

**Negligent Misrepresentation Against Defendants on Behalf of the Class**

106.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.   Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Contaminated Dog Foods.

- 47 -

108. Defendants breached their duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendants and by failing to promptly remove the Contaminated Dog Foods from the marketplace or to take other appropriate remedial action in a timely manner.

109. Defendants knew or should have known that the ingredients, qualities, and characteristics of the Contaminated Dog Foods were not as advertised or suitable for their intended use, consumption by dogs, and were otherwise not as warranted and represented by Defendants. Specifically, Defendants knew or should have known that the Contaminated Dog Foods contained excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

110. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Contaminated Dog Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained excessive Vitamin D levels or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

111. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VI

## Negligence

112.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

113.   The Contaminated Dog Foods manufactured, distributed, marketed, and sold by Defendants are pet food within the meaning of California law.

114.   Defendants' conduct is negligent per se.   Defendants violated their statutory duty under California law, which provides prohibits:

      a.  The manufacture, sale, or delivery, holding or offering for sale of any pet food ingredient or processed pet food that is adulterated or misbranded

      b.  The adulteration or misbranding of any pet food ingredient or processed pet food.

      c.  The dissemination of any false advertising…

      d.  Use of any pet food ingredient that fails to conform to the standard of identity for the pet food ingredient…

115.   The Contaminated Dog Foods are "adulterated" within the meaning of California because "it bears or contains any poisonous or deleterious substance that may render it injurious to health," "If it contains a pet food ingredient for which a standard of identity has been established and the pet food ingredient fails to meet that standard" or "if damage or inferiority has been concealed in any manner."

- 49 -

116.    Defendants failed to exercise due care when they sold the Contaminated Dog Foods to Plaintiff and the Class Members based on: (1) their exclusive knowledge of the ingredients, content, and sourcing materials of the Contaminated Dog Foods; (2) their failure to properly audit and monitor any third-party suppliers as publicly represented to Plaintiff and the Class; (3) allowing the inclusion of excessive Vitamin D in the Contaminated Dog Food; and (4) failing to recall the Contaminated Dog Foods in a timely manner.

117.    Defendants' violations of these statutes were a substantial factor in the harm suffered by Plaintiff and the Class, including purchasing a product with *de minimis* value.

118.    By virtue of Defendants' negligence per se, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

**COUNT VII**

**Unjust Enrichment Against Defendants on Behalf of the Class**

119.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

120.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Contaminated Dog Foods. Defendants knowingly and willingly accepted and enjoyed these benefits.

121.   Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Contaminated Dog Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

122.   Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class.

123.   Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

124.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VIII**

**Violations of California's Consumers Legal Remedies Act, Cal. Civ.**

**Code §§ 1750, *et seq.*, Against Defendants on Behalf of the Class**

125.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

126.    Plaintiff and each proposed Class member are a "consumer," as that term is defined in section 1761(d) of the California Civil Code.

127.    The Contaminated Dog Foods are "goods," as that term is defined in section 1761(a) of the California Civil Code.

128.    Defendants are a "person" as that term is defined in section 1761(c) of the California Civil Code.

129.    Plaintiff and each proposed Class member's purchase of Defendants' products constituted a "transaction," as that term is defined in section 1761(e) of the California Civil Code.

130.    Defendants' conduct alleged herein violates the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

(a)    California Civil Code section 1770(a)(5), by representing that the Contaminated Dog Foods are pure, quality, healthy and safe for consumption and by failing to disclose that the Contaminated Dog Foods were in fact adulterated.

(b)    California Civil Code section 1770(a)(7), by representing that the Contaminated Dog Foods were of a particular standard, quality, or grade, when they were in fact adulterated;

(c)    California Civil Code section 1770(a)(9), by advertising the Contaminated Dog Foods with the intent not to sell them as advertised; and

(d)    California Civil Code section 1770(a)(16), by representing that the Contaminated Dog Foods have been supplied in accordance with previous representations when they have not.

131.    As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Contaminated Dog Foods.

132.    Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, section 1780(e) of the California Civil Code and section 1021.5 of the California Code of Civil Procedure.

## COUNT IX

**Violations of California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500,
*et seq.*, Against Defendants on Behalf of the Class**

133.    Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

134.    California's False Advertising Law ("FAL") prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

135.    As set forth herein, Defendants' claims that the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to deceive the public.

- 53 -

136.   Defendants' claims that the Contaminated Dog Foods are pure, quality, healthy, and safe for consumption are untrue or misleading because these claims fail to disclose that the Contaminated Dog Foods were in fact adulterated.

137.   Defendants' claim that the Contaminated Dog Foods are food that can be used to address specific medical and/or health issues because Defendants fail to disclose that the Contaminated Dog Foods were in fact adulterated with harmful and excessive levels of Vitamin D.

138.   Defendants knew, or reasonably should have known, that the claims were untrue or misleading.

139.   Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if they can be assured that the Contaminated Dog Foods are properly unadulterated pet food and meet the advertising claims.

140.   Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Contaminated Dog Foods.

**<u>COUNT X</u>**

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,
*et seq.*, Against Defendants on Behalf of the Class**

141.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

142.  The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

**Fraudulent**

143.  Defendants' claims that the Contaminated Dog Foods are pure, quality, healthy, and safe for consumption are untrue or misleading because these claims fail to disclose that the Contaminated Dog Foods were in fact adulterated.

144.  Defendants' claim that the Contaminated Dog Foods are proper food to address specific medical and/or health issues because Defendants fail to disclose that the Contaminated Dog Foods were in fact adulterated with harmful and excessive levels of Vitamin D. As alleged herein, Defendants sold and advertised the adulterated Contaminated Dog Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

- the CLRA, Cal. Civ. Code §§ 1750, *et seq*.; and
- the FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

**Unfair**

145.  Defendants' conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

146. Defendants' conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the FAL and the CLRA.

147. Defendants' conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

148. In accordance with section 17203 of the California Business & Professions Code, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

149. On behalf of himself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale the Contaminated Dog Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

- 56 -

A.    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.    An order enjoining Defendants from selling the Contaminated Dog Foods until the levels of Vitamin D or other ingredients that do not conform to the products' labels, packaging, advertising, and statements are removed or full disclosure of the risk and/or presence of such appear on all labels, packaging, and advertising;

C.    An order enjoining Defendants from selling the Contaminated Dog Foods in any manner suggesting or implying that they are suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated;

D.    An order requiring Defendants to provide a $500 voucher to each member of the Class;

E.    An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

F.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

G.      An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of California law, plus pre- and post-judgment interest thereon;

H.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

I.      An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

J.      An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

CLASS ACTION COMPLAINT

Dated: February 26, 2019          LOCKRIDGE GRINDAL NAUEN P.L.L.P.


By:  /s/ Rebecca A. Peterson
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
        rkshelquist@locklaw.com

STEPHENS & STEPHENS LLP
Conrad B. Stephens (266790)
505 South McClelland Street
Santa Maria, CA 93454
Telephone: (805) 922-1951
Facsimile: (805) 922-8013
E-mail: conrad@stephensfirm.com

ROBBINS ARROYO LLP
KEVIN A. SEELY (199982)
STEVEN M. MCKANY (271405)
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: kseely@robbinsarroyo.com
        smckany@robbinsarroyo.com

CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
        charles@cuneolaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITE DEPALMA GREENBERG, LLC
JOSEPH J. DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail: jdepalma@litedepalma.com
          scruzhodge@litedepalma.com

**Attorneys for Plaintiff**

CLASS ACTION COMPLAINT